USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12-12-08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
PRIMERA MARITIME (HELLAS) LTD.,                     :        08-cv-08660-PAC

                              Plaintiff,            :        ECF CASE   12/12/2008

        - against -                                 :        Plaintiff's papers add nothing to what
                                                             has been previously considered.
INDUSTRIAL CARRIERS INC. a/k/a ICI                  :        Accordingly, the motion for
WEAVER INVESTMENTS INC.,
SELENE SHIPMANAGEMENT SA,                           :              reconsideration is
AUSTER MARINE CO.,
DIAMANT CO. LTD., and                               :           DENIED)
TRESELLE NAVIGATION LTD.
                                                    :              So ordered.
                              Defendants.                         Paul A. Crotty
-----------------------------------------------------------X              USDJ

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR RECONSIDERATION AND MOTION FOR STAY OF
<u>EXECUTION OF ORDER VACATING MARITIME ATTACHMENT</u>**

MEMO ENDORSED

MEMO ENDORSED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

PRIMERA MARITIME (HELLAS) LTD.,                    :

               Plaintiff,                    :        08 Civ. 8660 (PAC)

    - against -                    :        ORDER

INDUSTRIAL CARRIERS INC. a/k/a ICI,              :
WEAVER INVESTMENTS INC., SELENE
SHIPMANAGEMENT SA, AUSTER MARINE CO.  :
and DIAMANT CO. LTD.,

             Defendants.             :

                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: NOV 0 7 2008
```

HONORABLE PAUL A. CROTTY, United States District Judge:

Upon reading the Complaint and related filings, as well as Defendant Diamant

Co. Ltd.'s motion pursuant to Admiralty Rule E(4)(a), and hearing oral argument from

the parties on November 7, 2008, for the reasons stated by the Court after oral argument,

the order and process of maritime attachment issued by the Court on October 15, 2008 is

VACATED in its entirety as to all Defendants named therein; and

For the same reasons, Plaintiff's motion to obtain an amended order and process

of maritime attachment upon its Amended Complaint is DENIED.

In addition, the Court is of the opinion that the present order does not involve a

controlling question of law, and therefore declines Plaintiff's request for an interlocutory

order pursuant to 28 U.S.C. § 1292(b).

Lastly, the parties are hereby notified that the Court has scheduled a subsequent

conference in this matter for Wednesday, November 19, 2008, at 2:30 PM.

Dated:        New York, New York
              November 7, 2008

                                   SO ORDERED

                                   _____
                                   PAUL A. CROTTY
                                   United States District Judge

```
                           8b7wpric
                                                              1
        8b7wpriC
    1   UNITED STATES DISTRICT COURT
    1   SOUTHERN DISTRICT OF NEW YORK
    2   ------------------------------x
    2
    3   PRIMERA MARITIME (HELLAS) LTD,
    3
    4               Plaintiff,
    4
    5        v.                           08 CV 8660 (PAC)
    5
    6   INDUSTRIAL CARRIERS, INC.,
    6   a/k/a ICI, WEAVER INVESTMENTS,
    7   INC., SELENE SHIPMANAGEMENT
    7   SA, AUSTER MARINE CO., and
    8   DIAMANT CO. LTD.,
    8
    9               Defendants.
    9
   10   ------------------------------x
   10                                    New York, N.Y.
   11                                    November 7, 2008
   11                                    11:15 a.m.
   12
   12   Before:
   13
   13                   HON. PAUL A. CROTTY,
   14
   14                                    District Judge
   15
   15                   APPEARANCES
   16
   16   LENNON, MURPHY & LENNON
   17        Attorneys for Plaintiff
   17   BY:  KEVIN J. LENNON
   18
   18   MAHONEY & KEANE, LLP
   19        Attorneys for Defendant Diamant
   19   BY:  GARTH S. WOLFSON
   20
   20   THOMAS L. TISDALE
   21   JONATHAN W. GREENE
   22
   23
   24
   25
                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```

```
                                                              2
        8b7wpriC
    1            (Case called)
    2            MR. LENNON:  Kevin J. Lennon, from Lennon, Murphy &
    3   Lennon, for the plaintiff, Primera Maritime, your Honor.
    4            MR. WOLFSON:  Garth Wolfson, Mahoney & Keane, for the
    5   defendants Diamant Co. Ltd.
    6            THE COURT:  Mr. Wolfson.
    7            MR. TISDALE:  Good morning, Judge.  My name is Thomas
    8   Tisdale of the Tisdale Law Offices.  We are not counsel for any
    9   party in this case.  I'm here as an interested party because I
   10   guess like I feel like it's my firm that's being dragged
   11   through the mud here on these representations of what's been
   12   said in the Glory Wealth case, so I thought I would make sure
                              Page 1
```

                              8b7wpric
13    it's set straight.
14              THE COURT:  All right.  We may call on you.  Who is
15    with you?
16              MR. GREENE:  Jonathan Greene, associate with the
17    Tisdale offices.
18              THE COURT:  All right.  Mr. Wolfson, you've moved
19    under E(4)(f) for setting aside the attachment, so you go
20    first.
21              MR. WOLFSON:  Yes, your Honor.  We have really two, I
22    characterize them as fairly straightforward issues to be dealt
23    with here, matters of law, really.
24              The first is whether by registering to do business
25    with the Department of State in New York, the main defendant,
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                      3
                              8b7wpriC
1     the contracting party, should be deemed found here within the
2     meaning of Rule B, and that's not subject to maritime
3     attachment.  And the second issue is if so whether the
4     plaintiff could still obtain an attachment against purported
5     alter egos of the contracting party.
6               On the first issue, what the plaintiff has come
7     forward with are a couple of old cases where the issue of ICI,
8     the contracting party's registration to do business in New
9     York, was never raised, and thus has no precedential value that
10    I can tell.  The other thing they have come forward with are
11    some cases where attachments have issued against ICI but have
12    never yet been contested.  As your Honor is aware, the
13    contesting of the attachment of the adversarial proceeding that
14    provides due process occurs in the Rule E hearing.  So again I
15    don't think that there's much to be gained by looking at those
16    orders.
17              When ICI entered financial difficulty, there had been
18    a flurry of attachments.  What we have shown, your Honor, is
19    several decisions already readily vacating those attachments on
20    the ground that ICI is found to do business here.  There is one
21    magistrate judge decision, an older decision from Magistrate
22    Judge Gorenstein, finding that more than registration is
23    required.  I've lost count now how many judges in this district
24    have weighed in on the other side of that, your Honor.  There
25    are several that have been attached to my declaration.
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                      4
                              8b7wpriC
1               I'll point out that in the Marimed case, there was
2     also an alter ego there.  The judge didn't discuss it, but he
3     readily vacated the attachment as against both the alter ego
4     and the contracting party.  There's also a decision from Judge
5     Daniels also refusing to extend an attachment to alter egos
6     after dismissing them against the contracting party, and that
7     was ICI.
8               I should also point out they've alleged --
9               THE COURT:  Don't you think all those cases though,
10    Mr. Wolfson, are skipping over, lightly touching on the
11    requirement that Judge Leval found in the Integrated case and
12    that the Second Circuit found in the Seawind case, that in
13    addition to having a designated agent here for the service of
14    process, that your client has to be present in a jurisdictional
15    sense?
16              MR. WOLFSON:  No, your Honor.  I think they relied on
17    those cases.  In fact, if you look at those cases that were
                              Page 2

8b7wpric

18  really compiled and cited, and Marimed, I think, is probably
19  the most recent, they go into that in some detail, and they
20  find that Magistrate Judge Gorenstein in fact misconstrued
21  Seawind.
22          THE COURT:  I didn't ask you about what Judge
23  Gorenstein did.  I asked you about what Seawind says and what
24  Integrated says.
25          MR. WOLFSON:  Very well, your Honor.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    5

8b7wpriC

1           THE COURT:  Let me tell you how it's quoted in Aqua
2   Stoli, and Aqua Stoli doesn't talk about Judge Gorenstein.  It
3   talks about Judge Leval's decision in Integrated, and it's very
4   clear from the Aqua Stoli decision that Integrated is still
5   good law.
6           Do you agree with me so far?
7           MR. WOLFSON:  Yes, your Honor.
8           THE COURT:  Now, "The fact that defendant can be
9   subject to the Court's in personam jurisdiction by virtue of
10  the presence of resident agent in the service of process will
11  not suffice to defeat the attachment if the defendant is not
12  otherwise present in the district in the jurisdictional sense,
13  nor will the fact that the defendant is present in the
14  jurisdictional sense suffice if he cannot be found for service
15  of process within the state."
16          Now, without a doubt, you have service of process
17  within the state.  What facts do you have that suggest that
18  you're present in the jurisdictional sense, the sense that
19  you're doing business here?
20          MR. WOLFSON:  Yes, your Honor.
21          The cases that I've addressed have always found that
22  by registering, you are in fact waiving any jurisdictional
23  defenses.  An overt waiver of any jurisdictional defenses, it
24  subjects you to jurisdiction here.  We have New York State
25  cases a mile long.  We have federal cases a mile long,
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    6

8b7wpriC

1   uniformly finding that.  Magistrate Judge Gorenstein --
2           THE COURT:  I'm not relying on Judge Gorenstein.
3           MR. WOLFSON:  Understood.
4           THE COURT:  You are relying on the recent decisions of
5   Judge Scheindlin, Judge Stein, Judge Daniels, Judge Lynch.
6           MR. WOLFSON:  Judge Lynch, Judge Marrero.  There are
7   probably three or four more, your Honor.
8           THE COURT:  You believe that ICI is present in the
9   district; that is, present for service of process and present
10  for jurisdictional purposes?
11          MR. WOLFSON:  Absolutely, your Honor.  By registering
12  with the Department of State, you get both.  You waive
13  jurisdictional defenses.  It's considered jurisdiction and
14  doing business in New York for the purpose of amenability to
15  sue, which is the overwhelming concern in the Second Circuit.
16  You are amenable to sue, there's no doubt about that.  And by
17  having the agent for service of process in the district, you
18  are satisfying the other prong.
19          THE COURT:  All right.  So ICI is present, in your
20  view?
21          MR. WOLFSON:  Yes, your Honor.
22          THE COURT:  Now, the alter ego, Diamant, are they
                        Page 3

                            8b7wpric
23   present?
24              MR. WOLFSON:  Yes, your Honor.  And again, we have
25   Second Circuit precedent talking about that for jurisdictional
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                    7
           8b7wpric
1    purposes, if the contracting party is present, then the alter
2    ego necessarily is present.  Otherwise, the Court would be
3    sanctioning without it, and that's what we have here.  And
4    again, I think that's fairly straightforward.  The only thing
5    plaintiff has come forward is some cases saying that the whole
6    idea of alter ego claims is to assist plaintiffs who are
7    creditors and not going after debts.  I really don't know how
8    to respond to that.  It's really not here nor there.  It
9    doesn't change the rule as to jurisdiction.
10             THE COURT:  Let me ask you a question.  Mr. Lennon's
11   point, as I understand it, is you can't have your cake and eat
12   it too.  Is Diamant present in the Southern District of New
13   York?
14             MR. WOLFSON:  Diamant would only be present in the
15   Southern District of New York through ICI.
16             THE COURT:  But ICI is present in the State of New
17   York?
18             MR. WOLFSON:  That's right.
19             THE COURT:  Is Diamant present in the State of New
20   York?
21             MR. WOLFSON:  Putting ICI on the alter ego allegations
22   aside, I don't believe I could say Diamant is present in New
23   York.  We don't have anything in the record to suggest that,
24   your Honor.  They were not registered individually with the
25   Department of State.  I don't think that matters because the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                    8
           8b7pric
1    Second Circuit said quite clearly --
2              THE COURT:  Let me put it to you most baldly then,
3    Mr. Wolfson.  If you say yes to my question that Diamant is
4    present, you're more than halfway home in terms of getting the
5    attachment lifted.  If you say no, then we're dealing with a
6    different kind of issue because that way you're trying to have
7    your cake and eat it too.  You have to tell me yes or no.
8              MR. WOLFSON:  They are present through ICI, yes, your
9    Honor.  I don't want to oversimplify the situation.  But, yes,
10   that is our position, they are present.
11             THE COURT:  If Mr. Lennon were then to proceed against
12   you, he would have ICI and all the defendants because they're
13   all alter egos, they'd all be present in New York, to proceed
14   on the merits in this lawsuit here?
15             MR. WOLFSON:  Yes, your Honor.
16             THE COURT:  You're present?
17             MR. WOLFSON:  For the record, we waive any
18   jurisdictional defenses.  We submit to this jurisdiction.  We
19   agree to personal jurisdiction in this district.
20             THE COURT:  You're saying this in open court.
21             MR. WOLFSON:  In open court.
22             THE COURT:  I won't ask you to file a stipulation to
23   that effect because you've already said it in open court.
24             MR. WOLFSON:  Absolutely.  We are here.  That's the
25   point of this motion.  Eating our cake and having it too, I
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                              Page 4

8b7wpriC

8b7wpriC

1   really think it's the other way around because if we are an
2   alter ego, then we are present in the district.  If we aren't
3   an alter ego, then again there is no reason for the attachment
4   and it should be vacated.
5           THE COURT:  Mr. Wolfson, I want to press the point.
6   If you are an alter ego, you're here.  Right?
7           MR. WOLFSON:  Yes, your Honor.
8           THE COURT:  But you are an alter ego, so we don't get
9   into "if we're not an alter ego."
10          MR. WOLFSON:  It's a matter of the pleading, your
11  Honor.  They're alleging we're an alter ego.  This is a motion
12  based on the pleading.  I can't get into the factual
13  distinctions.  We can assume for the sake of argument that
14  we're an alter ego.  We readily submit to the jurisdiction
15  here.
16          THE COURT:  When you answer, because you're going to
17  have to answer this complaint, are you going to admit that
18  you're an alter ego?  That's really what I'm asking.
19          MR. WOLFSON:  Your Honor, I really don't think it's
20  fair to ask us to waive --
21          THE COURT:  I don't care whether you think it's fair
22  or not.  That's the question to you.  I want to know if, at the
23  end of this lawsuit, all the ICI parties -- and let me just get
24  the pleadings.  When we finish here, I want to know if Primera
25  has jurisdiction over Industrial Carriers, Weaver Investments,
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

8b7wpriC

1   Selene Shipmanagement, Auster Marine Company and Diamant Co.
2   Ltd.
3           MR. WOLFSON:  We would agree to jurisdiction without
4   any doubt, your Honor.
5           As far as the factual determinations or legal
6   determinations as to what goes into an alter ego, it's really
7   beside the point.  We agree to jurisdiction.  We're here.
8   We'll say it on the record again and again.  We don't even need
9   to come out and say we are an alter ego or we are not an alter
10  ego because it doesn't matter.  Either way the attachment
11  should be vacated, and that's why it's the plaintiff that is
12  trying to have its cake and eat it too, and that's why the
13  Second Circuit has held that for jurisdictional purposes, you
14  can't pick and choose.  It's got to be all or none.  That's the
15  plaintiff's burden, not the defendant.
16          THE COURT:  Where does the Second Circuit hold that?
17          MR. WOLFSON:  Again, it wasn't in the context of Rule
18  B proceedings, but it's cited in my memorandum of law.
19          THE COURT:  Where is it cited in your memorandum of
20  law?
21          MR. WOLFSON:  One second, your Honor.  Beginning at
22  page 5, there's a string cite that continues.
23          THE COURT:  Is this in your reply memorandum?
24          MR. WOLFSON:  No.  My main brief, your Honor.
25  Beginning at page 5 and continuing on to page 6, begins in the
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

8b7wpriC

1   middle of page 5 and ends at page 6.
2           THE COURT:  Passalacqua v. Resnick case?
3           MR. WOLFSON:  That's one of them.
                       Page 5

8b7wpriC

4         THE COURT:  Securities and Exchange case.
5         MR. WOLFSON:  Yes.  And the Quebecor case and some
6  other cases.  I apologize for its length, but I wanted to
7  establish that this is a well settled principal, and it has
8  been applied in the Rule B context a couple of times.  I'm not
9  aware of any decision where the issue has been addressed head
10  on finding otherwise.  Those cases where it has been raised and
11  addressed have found invariably, as far as I know, and as far
12  as plaintiff has been able to show, that the alter ego should
13  stand and fall on presence of jurisdiction alone with the
14  target contracting party.
15         There's also one final note, your Honor, that they
16  mention that the biennial registration for ICI is purported to
17  have lapsed.  Again, that has nothing to do with the
18  jurisdictional presence and the two prongs of Seawind and the
19  reasons why registering to do business subjects a defendant to
20  personal jurisdiction in New York.  And I believe Judge Stein's
21  decision, which is attached to my declaration, does address
22  that point.
23         I believe everything else is fairly straightforward on
24  the law, your Honor.
25         THE COURT:  All right.  Mr. Lennon.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

12

8b7WpriC

1         MR. LENNON:  Good morning, your Honor.  I think you've
2  really touched on the whole point, your Honor.  It is whether
3  or not they're conceding they are an alter ego or not.
4         THE COURT:  You listened to Mr. Wolfson.  Do you think
5  he's conceded or not?
6         MR. LENNON:  I don't know that he has.
7         THE COURT:  What more do you want?
8         MR. LENNON:  For jurisdictional purposes, they are.  I
9  don't know if that means textbook conceding.
10         Also for the enforcement of a potential award, we are
11  not going to raise an argument that we're not one and the same
12  company.  I haven't heard that.  I don't think that's been said
13  on the record, certainly not in the pleadings.  But the
14  fruitful aspect of this case and the sole issue before you is
15  whether or not these alter egos, and Diamant solely, but I
16  believe this is really on behalf of all the alter egos we're
17  talking about them being alter egos of ICI, they can bootstrap
18  under ICI's registration.  We're not arguing here today before
19  your Honor whether or not ICI, a Rule B should issue against
20  ICI.  That is currently being litigated before Judge Holwell.
21  It's in the memorandum and the briefs in a case called Glory
22  Wealth.  I don't believe a decision has been issued in that
23  case, but it is relevant insofar as your Honor is concerned.
24         THE COURT:  Here's the issue as I see it, and I
25  believe that you're proceeding against a very tall mountain

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

13

8b7WpriC

1  here, Mr. Lennon.  With regard to ICI, I gather that the
2  overwhelming weight of the cases is that ICI is present and not
3  subject to a Rule B attachment.  That's what the last five or
4  six cases -- indeed, I held the same thing because I didn't
5  authorize an attachment against ICI.  So you can't point to any
6  cases in the Southern District of New York that say that ICI is
7  really not present here.  All the court decisions that I found
8  suggest that by virtue of its registration, it is present in

Page 6

8b7wpric

```
 9   the Southern District of New York and, therefore, is not
10   amenable to a Rule B attachment.
11             MR. LENNON:  I agree with that, your Honor, with the
12   exception of the Glory Wealth case before Judge Holwell.
13   That's being litigated, and you should be aware, your Honor,
14   there are a couple of cases before the Second Circuit on that
15   issue, whether or not the mere registration with the Department
16   of Corporations for New York State is sufficient.
17             THE COURT:  Right.  Okay.  But you can't point to any
18   contrary authority.
19             So now since ICI is not amenable to a Rule B, what's
20   the basis, if your allegations are correct that Diamant is an
21   alter ego and can be reached in the Southern District of New
22   York by virtue of its ICI, what's the basis for the attachment
23   against Diamant?
24             MR. LENNON:  Well, it's twofold, your Honor.  And I
25   think it's set out in our brief.
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

14

8b7wpric

```
 1             In the first case, there's no attempt to show that
 2   here by Diamant that they comport with the two-prong
 3   requirement that's shown in Seawind, Integrated, and Aqua
 4   Stoli, which is not only are you here in a jurisdictional
 5   sense, and here that jurisdictional sense is for Diamant, I've
 6   registered because my alter ego go is registered.  But I'm also
 7   amenable --
 8             THE COURT:  Listen, I don't mind your saying this
 9   because I'm observing your point.  But the fact of the matter
10   is that argument has been rejected by all the district court
11   judges who have considered that argument in recent times.
12   Correct?  I thought you just told me that.
13             MR. LENNON:  I'm just saying to show that you cannot,
14   that you're not subject to a Rule B, your Honor, you have to
15   show that you're present in the jurisdictional sense, and it
16   doesn't stop there.  You can be served with process.
17             Here, there's no showing as to how.  You know, Primera
18   Maritime could have said at the time this attachment was filed,
19   I'd like to serve Diamant or any of these alter egos.  I can
20   find a designated agent for service of process.  There's a
21   designated agent for ICI, but there's no showing here, and
22   that's CT Systems, that if we filed suit before, your Honor, we
23   are not seeking a Rule B, but in personam remedy here,
24   substantial relief, that we can go to CT Systems right uptown,
25   hand them the papers, and say, Here are some papers only
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

15

8b7wpric

```
 1   against Diamant, can you serve them.  There would be no ability
 2   for them to look up and say yes, we understand, this is where
 3   we'd serve them, and there's no showing.
 4             THE COURT:  I thought the whole thrust of the alter
 5   ego theory is if you have one, you have everybody that's flying
 6   under that masthead.
 7             MR. LENNON:  I believe that's where the distinction
 8   lies in Rule B, and the case is cited by Diamant, the William
 9   Passalacqua in particular, and then the Quebecor case and
10   Securities and Exchange Commission case, talking about when you
11   have a primary defendant, jurisdiction will extend to the alter
12   ego defendants.  That's consistent, however, as I point out in
13   our brief, with the theory of alter ego relief in the first
```
Page 7

8b7wpric
```
14   place.  In each of those cases, your Honor, you'll see the
15   alter egos resist jurisdiction.  The court, however, says we're
16   going to extend jurisdiction over you on the basis you are the
17   alter ego.  That's the equitable nature of the relief.
18            Here, Diamant's trying to turn that on its head to say
19   we can establish our jurisdiction in defeat of Rule B because
20   we're the alter ego, which I think is pretty apparent, at least
21   in the briefing stage, they didn't want to concede.  But again
22   returning to the Integrated case, which is still valid law,
23   adopted by Aqua Stoli and discussed in Aqua Stoli, you have to
24   show the plaintiff could have served you with process.  There's
25   absolutely no ability to show and no attempt even to show that
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

16

8b7wpriC
```
1    we could have serve Diamant with service process in this case.
2    Therefore, that two-prong inquiry is not met.
3             THE COURT:  Mr. Wolfson, what do you say about that
4    argument?
5             MR. WOLFSON:  We're talking at cross-purposes.  The
6    whole point of service on ICI is service on Diamant.  Personal
7    jurisdiction on ICI is personal jurisdiction on Diamant.  We're
8    sort of skirting around the one main argument I made here.  I
9    don't know if I made any other.
10            THE COURT:  Your point is by service on ICI, because
11   given their alter ego status --
12            MR. WOLFSON:  That's right, your Honor.
13            THE COURT:  -- service on one is service on all.
14            MR. WOLFSON:  That's right.  They're alleging alter
15   ego claims.  If they were alleging Diamant breached some
16   contract directly with them, which they are not, maybe we'd be
17   in front of your Honor arguing something different.  But in
18   this kind of situation, whether it's the plaintiff who was
19   resisting the jurisdiction in the Second Circuit case or not,
20   the principal and the point -- it couldn't have been clearer --
21   jurisdiction on one is jurisdiction on the other.  Whether it's
22   the plaintiff who is trying to speak out of both sides of its
23   mouth or the defendant, it doesn't matter.  They stand or fall
24   together.  That's the alter ego claim.  That's the essential
25   basis of the alter ego claim, and I have to point out as a
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

17

8b7wpric
```
1    matter of common sense and logic, it can't be any other way.
2    You can't on the one hand say you're an alter ego and you're
3    the same as the contracting party, and then say, well, as long
4    as it suits me, I'll selectively decide you're different for
5    other purposes.
6             In the context of jurisdiction, it has been clearly
7    addressed by the Second Circuit.  There are some decisions.  I
8    wish there were lengthier discussions about it, but we have do
9    have decisions which have declined to extend attachments to
10   alter egos when the contracting party is found here.  So I do
11   think that we do have the weight of the authority and the
12   weight of, as I said, common sense on our side.
13            THE COURT:  Mr. Lennon, I'll give you the last word.
14            MR. LENNON:  Thank you, your Honor.
15            Your Honor, I beseech you to read the Seawind case,
16   the 1963 Second Circuit decision, where the Court goes into
17   some length with respect to what could have been done by the
18   plaintiff at the time of seeking attachment to determine
```
Page 8

8b7wpric

19    whether or not defendant was there for the purpose of service
20    of process.  It's clear in that decision the Second Circuit was
21    saying a reasonable inquiry, due diligence inquiry, which every
22    Rule B plaintiff has to have performed before filing, would
23    have shown them I could serve process on this defendant, and
24    we'll have discovery.  There's no ability here other than the
25    alter ego argument, saying I'm bootstrapping on these other

18

8b7wpriC

1    cases saying for jurisdictional senses, I'm here also.  But
2    other than that, there's no ability here to show, and there's
3    no way to show that I --
4            THE COURT:  The point is, as I understand
5    Mr. Wolfson's argument, you don't have to serve the others,
6    they're already present.  By service on one, you can choose
7    service on all because of their alter ego status.
8            MR. LENNON:  Let's take this case in particular.
9    Let's say we made a determination at the beginning, no judge
10   has found Industrial Carriers is going to be susceptible to a
11   Rule B attachment.  We just know that.  They've registered, so
12   we're not going to do anything.  But we know these alter egos;
13   we only name them.  If that was a decision then made, there is
14   no ability and there is no showing that we could then find a
15   designated agent for service of process, unless you can tell
16   me --
17           THE COURT:  But you don't have a claim against
18   Diamant, right?
19           MR. LENNON:  Sure I do, your Honor.
20           THE COURT:  What?
21           MR. LENNON:  I don't understand why I don't have a
22   claim against Diamant.
23           THE COURT:  You haven't alleged any complaint about
24   Diamant.  The thrust of your complaint deals with the breach of
25   contract by Industrial Carriers.  That's what you say.  I mean,

19

8b7wpric

1    the only allegation about these defendants other than ICI is
2    that they are a foreign corporation organized, existing under
3    foreign law, was and is a trade name alter ego, paying agent,
4    receiving agent and/or joint venturer of ICI.  Then you go on
5    to talk about what ICI did to you and the forward freight
6    agreement, the FFA.  There's no allegation in here that Diamant
7    did anything.  It's all about ICI.
8            MR. LENNON:  Your Honor, I think --
9            THE COURT:  You say they're a shell corporation, in
10   paragraph 23.  And they have no separate independent entity,
11   independent of ICI, in paragraph 24.  And then in 25, you say
12   they pass through, so they don't count here.  The allegations
13   in chief that you make are by your client against ICI.
14           MR. LENNON:  Yes, your Honor.  But maybe I'm missing
15   your point, or you're missing mine.  I'm not sure.
16           THE COURT:  Probably both.
17           MR. LENNON:  Maybe so.
18           What I'm saying is if we had made the determination at
19   the time we filed this case -- let's not even name ICI, we'll
20   just discuss who they are.  We're only going after Rule B
21   attachment here for the alter egos, there would be no ability
22   to say how we could have served process on these alter egos.
23   Unless you can tell me, CT systems, we marched up to their

8b7wpric

24   office and provided process saying, These are companies we want
25   you to serve, they would then serve Industrial Carriers, which

20

8b7wpric

1    as far as I'm aware they wouldn't, your Honor.  They're not the
2    designated agent for these alter egos.  These alter egos can
3    certainly make themselves amenable to the same process that ICI
4    has done, your Honor, which is registering with the state.
5    They haven't done so, and there's no designated agent in this
6    district.
7            THE COURT:  Okay.  I'm going to rule now.  I
8    appreciate the parties, I know that the briefing was a little
9    bit truncated.  I asked that the matter be briefed promptly and
10   as thoroughly as it could be in the circumstance.  I appreciate
11   counsel doing that.  I appreciate counsel's coming here a
12   little bit early so that we can have a full discussion on the
13   issues.
14           The courts in this circuit apply a two-part inquiry in
15   order to determine whether a defendant is found within the
16   district.  The first part of the inquiry asks:  Is the
17   defendant found within the district for purposes of
18   jurisdiction?  The second asks:  Can the party be found here
19   for the service of process?  And I cite the Seawind case for
20   that at 320 F.2d 580 (2d Cir. 1963), and Judge Waterman's
21   decision dealing with a decision of the district court level by
22   Judge Bonsal.  So it's a relatively old case.
23           I also cite Judge Leval in the Integrated case when he
24   was sitting on the district Court, 476 F.Supp. 119, in the
25   Southern District 1979.

21

8b7wpric

1            With respect to jurisdictional component of the
2    inquiry, the majority of courts in this district have held that
3    defendant is present when it is registered as a foreign
4    corporation authorized to do business in the New York
5    Department of State, Marimed Shipping, Inc. v. Persian Gulf
6    Shipping, 567 F.Supp.2d 524, 528, decided in July of this year,
7    by Judge Marrero.  The second part of the inquiry, meanwhile,
8    is satisfied where the defendant is a registered agent located
9    in the district for the service of process, citing the Marimed
10   case at 528, 529.
11           In the present case, it appears that Industrial
12   Carriers is present in the district under Seawind's two-part
13   inquiry.  ICI registered with the New York Department of State
14   on November 16, 2005, and the Department of State also lists
15   the registered agent, CT Corporation System here in Manhattan
16   for the service of process.  Within the past month, several of
17   my fellow judges in this district, including Judge Scheindlin,
18   Judge Cote, Judge Daniels, Judge Holwell, Judge Stein, have
19   indicated or refused to issue attachments against ICI on the
20   basis of ICI's presence in this district.  This Court, in
21   issuing its attachment for the present case, specifically
22   excluded ICI because of its presence in this district.
23           The fact that ICI has failed to file certain papers
24   with the Department of State and has failed to pay its
25   registered agent do not change the fact of its presence.  ICI

22

8b7wpriC
8b7wpriC

1    remains registered in New York and service may be effected not
2    only through its registered agent but also through the
3    Department of State itself.
4            For the present purposes, the next question to be
5    considered is whether Diamant is an alter ego of ICI.
6    Plaintiff's initial complaint identified it as such.
7            If ICI is present in the district, and if Diamant is
8    ICI's alter ego, then Diamant is also present in the district
9    on the well settled ground that "if personal jurisdiction
10   exists over an individual, personal jurisdiction also exists
11   over his or her corporate alter ego."  Securities and Exchange
12   commission v. Montle, 65 Fed. Appx. 749, 753-54 (2d Cir. 2003).
13   In that case, a Rule B attachment is inappropriate.
14           If, however, Diamant is not an alter ego of ICI, then
15   ICI's presence in the district is of no consequence in the
16   present matter, and plaintiff should be allowed to obtain a
17   Rule B attachment.
18           Plaintiff has raised a concern that defendant is
19   attempting to have it both ways, that defendant is implicitly
20   agreeing that it is an alter ego for purposes of vacating the
21   attachment.  But if the attachment is indeed vacated, then it
22   will argue that it is not an alter ego and, therefore, not
23   subject to the jurisdiction of this Court in subsequent
24   proceedings.  We agree with the plaintiff that the defendant
25   cannot have it both ways, cannot have its cake and eat it too.

23

8b7wpriC

1    Judge Lynch, in Express Sea Transport v. Novel Commodities, SA,
2    06 Civ. 2404, correctly stated that "essentially Rule B gives
3    potential defendants a choice, either they subject themselves
4    to the courts of the district, or they open the up the
5    possibility that the property in the district will be
6    attached."  It's quoted in the Marimed decision, 567 F.Supp.2d,
7    at 528.  In the Express Sea Transport case, Judge Lynch vacated
8    the maritime attachment, but only after defendant had consented
9    on the record to the jurisdiction of the court.
10           That's why I asked Mr. Wolfson on three occasions
11   whether he agreed that the alter ego, Diamant, the alter ego of
12   ICI is present in the district and therefore amenable to the
13   suit.  He answered yes.
14           Right, Mr. Wolfson?
15           MR. WOLFSON:  Yes, your Honor.
16           THE COURT:  In light of that answer, I find that ICI
17   is present in the district under the two-part Seawind inquiry;
18   that Diamant was an alter ego of ICI and therefore also present
19   in the district; that Diamant, by its own admission, is subject
20   to the jurisdiction of this Court.  As a consequence,
21   plaintiff's Rule B attachment must be vacated as to Diamant.
22           That consists of the Court's findings and conclusions.
23   I'll enter an order to that effect this afternoon, about any
24   decision.  The attachment, though, is vacated, and
25   Mr. Wolfson's motion on behalf of Diamant, Rule E(4)(f) motion

24

8b7wpriC

1    is granted.
2            MR. WOLFSON:  Thank you, your Honor.
3            THE COURT:  Anything else?
4            MR. LENNON:  We just ask that you certify the question

Page 11

8b7wpriC

```
 5    for immediate appeal, your Honor, to the Second Circuit.
 6              MR. WOLFSON:  Your Honor, the appeal is already
 7    pending.  It's already been briefed.  There's nothing new here.
 8    We have probably a dozen judges going our way in this district.
 9    The Second Circuit is clear on the alter ego issue.
10              THE COURT:  Mr. Lennon, what about certification?  If
11    it's already up there, the Second Circuit has more than enough
12    to do.  They're very busy.
13              MR. LENNON:  I'm not aware of any case previously
14    finding on the alter ego issue, your Honor.  The issue pending
15    before the Second Circuit is whether mere registration is
16    sufficient to create a presence to thwart Rule B.  I'm not
17    aware of any other decision in the Rule B context on the alter
18    ego issue.
19              MR. WOLFSON:  That makes it easier, your Honor,
20    because on that issue, I do think the Second Circuit has ample
21    authority directly on point.  Your Honor cited them just now on
22    the record, so I don't think these are circumstances requiring
23    interlocutory appeal here.
24              THE COURT:  I'll consider it.
25              MR. LENNON:  Thank you, your Honor.
```

8b7wpriC

```
 1              THE COURT:  For our court reporter, is somebody going
 2    to order a transcript?  Would somebody please order a
 3    transcript.
 4              MR. LENNON:  Yes, your Honor.
 5              MR. WOLFSON:  Yes, your Honor.
 6              THE COURT:  Thank you very much.  The order will be
 7    entered at the end of the afternoon.
 8              MR. LENNON:  I think, your Honor, we had an amended
 9    complaint, and I gather from today's ruling, that another alter
10    ego -- I don't know if you want to enter another order.
11              THE COURT:  You had an amended complaint?
12              MR. LENNON:  I had an amended complaint.  And your
13    Honor issued -- there was a letter submitted with it.  You
14    endorsed it and said pending the outcome of today's conference.
15    You didn't want to rule on it, but I guess you should probably
16    enter an order on that as well.
17              THE COURT:  What did you say in the amended complaint?
18              MR. LENNON:  There's another alter ego.  There's
19    probably 50 alter egos of this company.  We're discovering one
20    by one.
21              MR. WOLFSON:  What's happening is there's a sort of
22    pile-on effect against ICI.  I don't know how many complaints
23    have now been filed.  They're vacated almost as fast as they're
24    being filed.  Each time more and more alter egos are being
25    alleged.
```

8b7wpriC

```
 1              MR. LENNON:  Unearthed, I would say.
 2              THE COURT:  Do you care if we grant Mr. Lennon's
 3    motion for amended complaint?  You haven't answered.
 4              MR. WOLFSON:  Your Honor, I'm only appearing for
 5    Diamant, so I can only speak for Diamant.
 6              MR. LENNON:  Let me be clear.  We filed, it's a first
 7    amended complaint, so we had as of right.  We had asked for an
 8    amended ex parte order.  Your Honor endorsed the letter.  You
 9    can see on the docket, endorsed the letter saying pending
```

8b7wpric

10  today's outcome at the conference, you weren't going to rule
11  whether or not we would get our amended ex parte order.   I
12  gather you should probably for the sake of completeness on the
13  record and the docket deny the request for an amended ex parte
14  order, I think.
15          THE COURT:  That's what I'll do.  Then it will be
16  complete.
17          MR. LENNON:  We should probably have a scheduling
18  conference as soon as possible.  I know my client wants to push
19  ahead.  If we're going to have a judgment against all the alter
20  egos, they want to get it ASAP.
21          THE COURT:  All right.
22          MR. WOLFSON:  Your Honor, on that issue, what usually
23  happens with the alter egos is that they usually just agree to
24  appear wherever the arbitration is commenced against ICI, so it
25  can be handled in one forum.  That's usually the way it goes,
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                        27

8b7wpriC

1  but I'll discuss that with Mr. Lennon.
2          THE COURT:  We'll schedule you a conference.  We'll
3  let you know about the conference.  We'll do it in the next two
4  weeks, so we can find out where we're going.
5          Thank you very much.
6          (Proceedings adjourned)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

1          UNITED STATES DISTRICT COURT
2          SOUTHERN DISTRICT OF NEW YORK

3     ------------------------------x
4     PRIMERA MARITIME (HELLAS)
5     LTD,

6                  Plaintiff
7                                    DOCKET NO.: CV-08-8660 (PAC)
8            -vs-                    New York, New York
9                                    November 19, 2008
10    DIAMANT COMPANY LTD,

11               Defendant
12    ------------------------------x

13        TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE

14        BEFORE THE HONORABLE PAUL A. CROTTY
15             UNITED STATES DISTRICT JUDGE


16    A P P E A R A N C E S:

17    For the Plaintiff:          KEVIN J. LENNON, ESQ.
18                                Lennon Murphy & Lennon LLC
19                                420 Lexington Avenue, Suite 300
20                                New York, NY  10170


21    For the Defendant:          GARTH S. WOLFSON, ESQ.
22                                Mahoney & Keane LLP
23                                11 Hanover Square, 10th Floor
24                                New York, NY  10005




25    Audio Operator:             No Audio Operator

26        Proceedings Recorded by Electronic Sound Recording
27        Transcript Produced by Transcription Service
28    --------------------------------------------------------
29                      KRISTIN M. RUSIN
30                   217 Pine Meadows Circle
31                      Hickory NC 28601
32                    kmrusin@earthlink.net

1    THE CLERK:  Your Honor, this is the matter of Primera

2 Maritime v. Industrial Carriers, et al., docket number zero

3 eight civil eight six six zero.

4    For the plaintiff, please state your appearance for

5 the record.

6    MR. LENNON:  Kevin J. Lennon, from Lennon Murphy &

7 Lennon, for plaintiff, Primera Maritime.

8    THE COURT:  Mr. Lennon, congratulations --

9    MR. LENNON:  Your Honor.

10    THE COURT:  -- for getting your computer in here.

11    MR. LENNON:  It's in, but it's not powered up.

12    THE COURT:  [Laughs]  All right.

13    MR. WOLFSON:  Garth Wolfson, Mahoney & Keane, for the

14 defendant Diamant Co Limited.

15    THE COURT: All right.  All right, please be seated.

16    Mr. Lennon, how do you want to proceed here?  I did

17 what I did.  You know, Mr. Wolfson says he's subject to the

18 jurisdiction of the court, so how do you want to proceed?

19    MR. LENNON:  Well, I -- we need a clarification, Your

20 Honor, because --

21    THE COURT:  Yeah.

22    MR. LENNON:  -- the sticking point at the hearing was

23 whether or not Diamant was conceding its alter ego status,

24 which --

25    THE COURT:  I thought it -- there's no -- no.  Mr.

1  Wolfson said that the alter egos -- that the other named

2  defendants were, in fact, alter egos and they're subject to the

3  jurisdiction of the court.

4          MR. LENNON:   That's my view of the transcript, Your

5  Honor.

6          MR. WOLFSON:   Your Honor, I -- Your Honor, I thought

7  I -- the judge -- Your Honor presented a choice, that there was

8  an election to be made, about whether you agree to the

9  jurisdiction of the court or whether you are not.   And we

10  agreed to the jurisdiction of the court, but I thought I was

11  pretty careful not to concede on the merits as to the factual

12  and legal contentions as to what is an alter ego.   We -- we

13  agreed to the -- the jurisdiction of the court.   I think that

14  was --

15          THE COURT:   Over all the defendants.

16          MR. WOLFSON:   I can't possibly agree to all the

17  defendants.   I can only agree to Diamant, Your Honor.   But

18  Diamant -- we accede to the jurisdiction of the court.   And in

19  fact, I misspoke when I said that Diamant had not registered to

20  do business here.   Diamant did register to do business here.

21  It was just two weeks after the complaint was filed.

22          So Diamant -- there's no question Diamant accedes to

23  the jurisdiction of the court.   We stipulated to that on the

24  record several times.

25          THE COURT:   Right.

1       MR. WOLFSON:  But I -- I think Mr. Lennon's blurring
2  the distinction between admitting one is an alter ego and
3  conceding that -- to be present in the district, and I don't
4  think this is having it --
5       THE COURT:  Well, I don't have --
6       MR. WOLFSON:  -- both ways --
7       THE COURT:  -- the transcript in front of me.  My
8  recollection is Industrial Carriers is present, and Diamant --
9       MR. WOLFSON:  Exactly, Your Honor.
10       THE COURT:  -- is present.
11       MR. WOLFSON:  Yes, Your Honor.
12       THE COURT:  All right.  Okay.
13       So you have two defendants and a live action.
14       MR. LENNON:  Well, that's -- that's the problem, Your
15  Honor.  There -- this was the whole rub of what we were talking
16  about.  They're still reserving their right to contest the
17  alter ego status, but in our view and the consistent way,
18  legally speaking, is to enable themselves to benefit from ICI's
19  registration, which was the only operative registration at the
20  time we filed the complaint, they have to concede yes, we're
21  the alter ego.  Therefore --
22       THE COURT:  No, I don't know if they have to concede
23  anything, Mr. -- Mr. Lennon.  You have a lawsuit against
24  Industrial Carriers and Diamant.  They are present in this
25  district.  And my question to you is how do you want to

1  proceed.  Do you want an answer from them?  Mr. Wolfson has to

2  answer.  I'd like a civil case management plan, because you've

3  now established that Industrial Carriers and Diamant are

4  subject to the jurisdiction of the court, so I've got a live

5  lawsuit.

6          You've invoked the jurisdiction of the court.  You

7  don't have -- you don't have the ability to issue a maritime

8  process here of garnishment and attachment.  That's gone.  But

9  you do have two defendants here.  How do you want to proceed?

10  If you don't want to proceed, we'll dismiss the case.

11          MR. LENNON:  Well, no, Your Honor.

12          THE COURT:  If you do want to proceed, you know,

13  you've got to file a civil case management plan.

14          MR. LENNON:  I understood all of that, Your Honor.

15          THE COURT:  All right.

16          MR. LENNON:  However, it's critical to my client's

17  decision how it wants to proceed, because this venue -- this

18  action was primarily filed as an ancillary action, the security

19  for --

20          THE COURT:  Do you have an action pending anyplace

21  else?

22          MR. LENNON:  There is -- well, it's a -- it depends

23  on what happens here, Your Honor.

24          THE COURT:  Oh, no, no, no, no, no.  Answer my

25  question.  Do you have an action pending anyplace else, either

1  an arbitration or a litigation, in a forum where you've issued

2  process and the defendants have appeared?  Yes or no?

3  　　　　　MR. LENNON:  Not to my knowledge, Your Honor.

4  　　　　　THE COURT:  Okay.  Now, --

5  　　　　　MR. LENNON:  But we -- we do --

6  　　　　　THE COURT:  Now, listen.

7  　　　　　MR. LENNON:  -- want to proceed.  We --

8  　　　　　THE COURT:  Do you -- do you think the right of

9  attachment exists independent -- there's an independent right

10 of attachment?  Attachment is to secure jurisdiction.  You

11 don't need it here because you have jurisdiction.

12 　　　　　So you have -- you have a right now, and I'm not

13 going to give you -- I don't give advisory opinions.  You have

14 two live defendants here.  If you have a lawsuit against them,

15 you either proceed or you don't proceed.

16 　　　　　MR. LENNON:  I understand everything -- what you're

17 saying, Your Honor.

18 　　　　　THE COURT:  Okay.  Well, then tell me what my -- what

19 the answer is.

20 　　　　　MR. LENNON:  We want to proceed, and I guess the

21 first issue we have to get to -- what I'd like to do -- I'm

22 happy to submit a scheduling order -- to serve admissions,

23 whether or not these are alter ego defendants.

24 　　　　　THE COURT:  Listen.  How you conduct your lawsuit is

25 up to you.

1        MR. LENNON:  That's fine, Your Honor.  It just -- it

2   goes part and parcel with what my client does.  It has effect

3   in other jurisdictions.  And beyond that, Your Honor -- and

4   contrary to what I think is clearly established in the

5   transcript, where there is concessions about the alter ego

6   status, which is highly relevant to my client's cause of action

7   and its attempt to gain security -- we named several other

8   parties.

9        But, Your Honor -- and they have not appeared here.

10  Your Honor has vacated the attachment as against all those

11  other parties without an appearance from them, and I think Mr.

12  Wolfson is clarifying he does not appear for any of them.  So

13  I'm not quite sure if that's technically correct -- you know,

14  whether or not the attachments should still be valid as against

15  those defendants who haven't appeared, who haven't raised any

16  arguments in this district, and we should still have the

17  ability to serve the Rule B attachment.

18        THE COURT:  Okay.

19        MR. LENNON:  So it's --

20        THE COURT:  If that's a motion, I'm denying it.  I'm

21  not going back.  We're back to the same point now, Mr. Lennon.

22  Primera Maritime Hellas Limited does not have a lawsuit pending

23  anywhere in the world except here in the Southern District of

24  New York.  It's called eight civil eight six six zero, and it's

25  assigned to me.

1           And I'm telling you right now, either file a civil

2   case management plan and commence your litigation or I'm going

3   to dismiss the case.   That's what you can tell your plaintiff.

4       (Pause in proceeding)

5           MR. LENNON:  All right, Your Honor.  We will.

6           THE COURT:  When am I going to get my civil case

7   management plan?

8           MR. LENNON:  How soon can we get it in, Garth?

9           MR. WOLFSON:  Your Honor, the complaint alleges

10  London jurisdiction pursuant to a forum selection agreement,

11  that it has to be brought in London.  The complaint alleges

12  they will shortly commence London -- London proceedings.  We're

13  amenable to appearing in those London proceedings.  It doesn't

14  make sense to have multiple --

15          THE COURT:  Now, wait a minute, Mr. Wolfson.

16          MR. WOLFSON:  -- fora.

17          THE COURT:  You know, --

18          MR. WOLFSON:  I'll appear --

19          THE COURT:  -- you've got a lawsuit here.  If you

20  want to make a motion that this is not a convenient forum, you

21  want to make a -- but you -- you've agreed that you're subject

22  to the jurisdiction.

23          MR. WOLFSON:  No doubt, we're subject to the

24  jurisdiction.

25          THE COURT:  Okay.  So that means that maybe you have

1    all the -- you have lots of defenses that are available to you.

2    If you want to make them, that's fine with me.   I'm not

3    foreclosing that.

4              MR. WOLFSON:   Very well, Your Honor.

5              THE COURT:   But you've got to answer the complaint or

6    --

7              MR. WOLFSON:   Yes, Your Honor.

8              THE COURT:   -- move, because you're --

9              MR. WOLFSON:   Of course.

10             THE COURT:   -- subject to the jurisdiction.

11             MR. WOLFSON:   Very well, Your Honor.

12             THE COURT:   And I'd like a civil case management

13   plan.   And if you intend to make a motion, you know, let me

14   know what the motion is.

15             MR. WOLFSON:   I'll tell you right now, Your Honor.

16   This is the way it has gone in the past with other cases in

17   this situation, where the attachment's been vacated.   There is

18   -- the proceeding in New York is meant to be ancillary, as Your

19   Honor said, to secure the results of another forum's litigation

20   or arbitration which is the forum of contract.   In this case,

21   it is London.

22             So we still have that -- for the in personam lawsuit,

23   it should still proceed in London.

24             THE COURT:   Well, make that motion, then, and --

25             MR. WOLFSON:   That's where --

1        THE COURT:  -- we'll -- we'll await --

2        MR. WOLFSON:  -- I see this going, Your Honor.

3        THE COURT:  -- we'll await the outcome of it.

4        You know, I'm -- I'm really interested in this.

5   There's more and more maritime attachments being filed now.

6   We're going to make about seventeen hundred this year in the

7   Southern District of New York.  And it's -- you know, you have

8   an action involving a shipment of goods from India to China,

9   with a Hong Kong company and a Shanghai company, and nobody's

10  even seen the western hemisphere.

11       And it's subject to jurisdiction in -- nobody brings

12  a lawsuit.  Nobody brings an arbitration.  You just have an

13  attachment.  It's almost a naked attachment.  And attachments,

14  so far as I'm concerned, are always aligned with some kind of

15  litigation.  And here, it's -- you know, it's reconnoitering by

16  fire.  If you can find somebody to shoot at and get a target,

17  you're one step up.

18       I want to tell you, I think there's a serious body of

19  thought within the Southern District of New York who's

20  questioning this whole process as to whether or not you can get

21  these naked attachments.

22       But having said that, Mr. Wolfson, you are now

23  subject to the jurisdiction of the court, --

24       MR. WOLFSON:  Yes, Your Honor.

25       THE COURT:  -- and you can make whatever motions you

1 think are appropriate.

2          MR. WOLFSON:   Thank you.

3          THE COURT:   If it's not going to make -- it's not

4 going to be a civil case -- and you can, too, Mr. Lennon.  So

5 if the civil case management plan -- put in all the motions you

6 want to make, and let me know what the schedule is.  I'll so

7 order it, and then you can proceed.

8          You don't have to make any -- submit any letters for

9 pre-motion conferences.  I understand what you want to do, Mr.

10 Wolfson, and we'll just abide the event.  Thank you.

11          MR. WOLFSON:   Thank you, Your Honor.

12          THE COURT:   This court stands in recess.

13                    *     *     *     *     *

14          I, KRISTIN M. RUSIN, court approved transcriptionist, certify that the
15 foregoing is a correct transcript from the official electronic sound recording of the proceedings
16 in the above-entitled matter.
17          Transcript is certified original only if signed in green ink.

18          11/22/08